## TICKEL et, Plaintiffs-Appellees, v. SHOCK, et, Defendants-Appellants.

Ohio Appeals, Second District, Montgomery County.

No. 1909.   Decided January 24, 1947.

George F. Holland, Dayton, for plaintiffs-appellees.
Julius Herchig, Dayton, and Irvin Carl Delscamp, Dayton, for defendants-appellants.

### OPINION

By THE COURT:

This is an appeal on questions of law and fact from the Court of Common Pleas of Montgomery County, Ohio. The plaintiffs are seeking a decree of specific performance whereby the defendants are required to deed to the plaintiffs a parcel of land consisting of fifteen acres located on the Germantown Pike southwest of Dayton, Ohio.

The petition is based upon an alleged oral contract entered into by the plaintiffs and the defendant, Mae F. Shock, a duly authorized agent of the defendant, Ross F. Shock, whereby the plaintiffs agreed to purchase a tract of land consisting

of fifteen acres with a frontage on the Germantown Pike now known as State Highway No. 4, of 784 feet, for the sum of $7300.00. The sum of $100.00 is alleged to have been paid on the purchase price and the balance was to be paid upon the delivery of a general warranty deed. Plaintiffs allege that they have tendered the balance of $7200.00 and the defendants have refused to deliver the said deed.

The petition alleges further that the defendants have delivered possession of the same premises to the plaintiffs under said contract and that they have continued and are still in possession of the same. The defendants deny generally all of the allegations contained in the plaintiffs' petition.

The record in this case discloses that the defendant, Ross F. Shock, is the owner of a tract of land situated in Montgomery County and fronting upon Germantown Pike. This land had been purchased by the defendant, Ross F. Shock, from his grandfather's estate. Mae F. Shock, one of the defendants herein is the mother of Ross F. Shock, and was one of the heirs from whom the farm was purchased. Dorothy Shock is the wife of Ross F. Shock.

Before this purchase was made by defendant Ross F. Shock, a survey was made of this farm by Glenn Murr, a licensed surveyor, which was completed in the year 1944. After purchasing this farm the defendant, Ross F. Shock, retained Glenn Murr for the purpose of subdividing this property into lots containing two to three acres of land. After this subdividing was done there remained approximately twenty acres which were not suitable for subdividing. This tract contained the house and other buildings and was commonly referred to as the "Homestead." It was from this tract of land that the defendants sold to the plaintiffs the fifteen acres. We find from the evidence that Mae F. Shock was acting as the duly authorized agent of the defendant, Ross F. Shock. After several conferences with Mae F. Shock, on July 17, 1945, an agreement was entered into between Mae F. Shock and these plaintiffs for the purchase of fifteen acres for the sum of $7300.00, the sum of $100.00 being paid in cash and for which the plaintiffs were given a receipt which stated that it was for down payment on the Fryer farm consisting of fifteen acres. On or about the 28 day of July, 1945, the plaintiffs moved into the premises and are still in possession. On August 6, 1945, a dispute arose between these parties as to the boundary lines of the fifteen acres, the plaintiffs claiming that they were to have a frontage of 784 feet on Germantown Pike, and the defendants contending that they were to receive only 605 feet. The testimony discloses that this frontage was discussed by the

parties and the trial court found the 784 feet to be correct. Were this the only dispute with reference to the boundaries of the fiftteen acres the plaintiffs would be entitled to a decree. We find from the evidence that a part of the remaining boundary line was not agreed upon by these parties. The evidence discloses that Mrs. Shock showed these plaintiffs a map of the farm and that she traced its boundaries from it with the plaintiffs. Two maps have been offered in evidence as being the ones she used. The one offered by the plaintiffs and known as Plaintiffs' Exhibit D, is a blue print on which certain lead pencil markings have been added. This map was found in the possession of Mr. Murr, the surveyor, who testified that it was in his possession at all times; that it was being used by him as a work sheet for the purpose of completing the survey and therefore was not in Mrs. Shock's possession on July 17. The other map offered is known as Defendants' Exhibit No. 2 and it shows only the boundaries of the twenty acre tract.

After considering all of the evidence we are of the opinion that this is the map used by Mrs. Shock in describing to these plaintiffs the boundary line of the farm. The testimony discloses that a small creek runs from the Germantown Pike in a southeasterly direction through this farm. The plaintiffs were to receive some land to the east of this creek, but what those boundaries were was not definite and could not be ascertained from the map shown to these plaintiffs.

On cross-examination Mrs. Tickel was asked the following question:

"Q. So you didn't know after she told you that night, where the line would be, did you?

A. Over across the creek I didn't, but I knew where the rest of it was.

* * *

Q. And after that where did the east or west line go to?

A. Well, the east line was down and went to the creek on that side.

Q. And then where did it go after that?

A. Well it crosses there.

Q. How far across the creek does it go?

A. I don't know.

Q. How many feet?

A. I don't know.

Q. Where did she point to?

A. Over to Bowman's cornfield fence.

Q. And how far along Bowman's fence would it go?
A. I don't know.
Q. What did she tell you?
A. To a certain point, where it comes back.
Q. What was the certain point?
A. I don't know."

The testimony of Mr. Tickel with reference to the east boundary is just as indefinite as that of his wife. He was asked the following question:

"Q. In other words, all you can tell about this blue print was the existing fence line 'I,' and the line 'T.'
A. That's the one there.
Q. And the other lines you can't tell about?
A. I don't know for sure. She pointed out where this would be here, but I don't know—the road frontage is the main part.
Q. I know, but I want to find out what part contained this 15 acres that she showed you on this map?
A. Well, this down here, and this one.
Q. That's the only two you remember?
A. That's right."

Mr. Tickel testified on another occasion that Mrs. Shock did not tell them how many acres they would receive east of the ditch. Mr. Glenn Murr, the surveyor, testified that the plan was to find a purchaser for a part of the remaining acreage and then to make the survey. He testified that his survey for the fifteen acres was not completed until August 15, and until this was done it would be impossible to give a description for fifteen acres out of the whole tract.

The question of the statute of frauds was raised by the defendants, but since the plaintiffs were placed in possession of the property, we find that it has no application. See 37 O. Jur. 141; Hodges v Ettinger, 127 Oh St 460. This proposition is so academic that we believe no further citations are necessary. One of the fundamental rules respecting the specific performance of contracts is that performance will not be decreed where the contract is not certain in its terms. State v Baum, 6 Ohio 383, Trent Mill. Co v Wells-Abbott-Nieman Co., 10 Oh Ap 297, Lindner Co. v Myrod Shoe Co., 38 Oh Ap 182.

The terms must be complete and free from doubt or ambiguity and must make the precise act which is to be done clearly ascertainable.

We find in Pomeroy's Specific Performance of Contracts, Third Edition 1926, Par. 136, page 350, the following statement:

"In order that a court of equity shall exercise its power to decree a specific execution, where there has been a part performance, the contract itself must be clear, certain, and unambiguous in its terms, and must either be admitted by the pleadings, or proved, with a reasonable degree of certainty, to the satisfaction of the Court. If, therefore, upon all the evidence given by both parties, the Court is left in doubt as to the entire contract, or even as to any of its material terms, it will not grant the remedy, although a partial performance of something has been sufficiently proved. It has been said, in some American decisions, that in suits upon contracts for the purchase or sale of land, the location and boundary of the land in question must be clearly defined in the contract and established by the evidence; and though the parties have agreed as to all other terms, if they have not as to these particulars, there is no contract which can be enforced."

After applying the principle of law announced supra we are of the opinion that the plaintiffs are entitled to no relief for the reason that the eastern boundary line of this tract of land was not agreed upon between these parties. There was never a meeting of the minds and this Court cannot make a contract for these parties and furnish a description of the fifteen acres of land which was undivided at the time the agreement was entered into. We think that the defendant, Ross F. Shock, demonstrated his good faith in this matter, for about a week after the contract was entered into, when he learned that there was a misunderstanding as to the amount of frontage on the Germantown Pike, he offered to return to the plaintiffs their $100.00 deposit and in addition to pay their expenses incurred in moving into the property.

For the foregoing reasons our judgment is for the defendants for costs.

HORNBECK, PJ, MILLER and WISEMAN, JJ, concur.

No. 1909. Decided March 5, 1947.

## OPINION

By THE COURT:
Submitted on application for rehearing filed by the plain-

262

tiffs-appellees. We agree with the law cited by the plaintiff that where the land to be conveyed is identified, oral evidence may be introduced to enlarge upon a description in order that it may be exact by metes and bounds or otherwise; that where the land to be conveyed is ascertained the description becomes a mere matter of form. But this is not our case. The evidence does not definitely disclose what land was to be conveyed. We find that there was no meeting of the minds as to all of the boundaries of the fifteen acres which were to be taken out of a tract of approximately twenty acres. The law cited by the plaintiff would be applicable if the evidence showed that the defendant owned only fifteen acres and that it remained to be surveyed after the agreement was entered into in order to determine the exact metes and bounds; or if the evidence showed that when Mrs. Shock took the plaintiffs over the tract she pointed out to them definite land marks or monuments bounding the property from which the exact boundaries could be determined. In such a situation oral evidence would be admissible to prove the metes and bounds from which a definite description could be made, and the plaintiffs would be entitled to the relief prayed for. In our original opinion we pointed out where and why we thought the plaintiff failed in its burden of proof. Our difference is not upon the law but upon the facts. It is true the plaintiffs were placed in possession of the house on this property, but the exact land of which they were placed in possession is in dispute.

The application is denied.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.