OPINION
Defendant-Appellant David A. Weeks appeals the trial court's affirmance in part and reversal in part of the magistrate's decision in Plaintiff-Appellee Thomas H. Carnahan's action against Weeks for breach of contract, Weeks' counterclaims against Carnahan for breach of contract and fraud, and Weeks' cross-claims against Third-Party Defendant-Appellee Joseph Ressa. For ease of comprehension, we will, in as brief a fashion as possible, recount the basic facts of the transaction giving rise to these causes of action, supplementing them as it becomes necessary in our discussion of the parties' assignments of error.
In the summer of 1995, Weeks and his son contacted William Silver, a mortgage broker, and expressed an interest in acquiring commercial property for the purpose of operating an automotive repair shop. Carnahan and Ressa were, at the time, co-owners of Automotive Management Service, Inc., with each holding fifty percent of the corporation's stock. They operated two businesses under the umbrella of Automotive Management Service, Inc.; a car sales business and an auto repair shop. Carnahan maintained the business records of both companies and ran the car sales business and Ressa worked as a mechanic in the auto repair shop.
In time, Silver became aware that Carnahan was interested in divesting himself of his interest in the auto repair shop and negotiations began between Carnahan and Weeks. Silver acted as Weeks' agent in the negotiations. Although he was half owner of the business, Ressa was, at most, only peripherally involved in the negotiations.
Silver and Weeks were given access to the business and financial records of the auto repair shop, such as they were. No actual accounting books were kept, so Silver and an accountant he hired to assist him in evaluating the business were left to sort through work orders, invoices, tax returns, and bank statements, from which they compiled a profit and loss comparative for the years 1990 through 1994.
In the process of poring over the records provided, Silver and Weeks learned that the business had little or no income value. The records also revealed that the shop had a line of credit account with Wells Fargo Bank with an outstanding balance of approximately $30,000 and that the accounts receivables were valued at approximately $55,500, but many of those accounts were expected to be uncollectible due to poor record keeping.
In November of 1995, Weeks' son Rob began working in the auto repair shop with Ressa as a way of assessing their compatibility. In addition, Weeks began spending time at the shop observing the day-to-day operations including the payment of bills.
By the end of January 1996, the parties had come to a general agreement that Weeks would purchase Carnahan's interest in the shop for $50,000. Silver, acting with the consent of Carnahan and Ressa, drafted the parties' agreement in what he titled a "Letter of Agreement" dated February 1, 1996. The document was signed by all parties in their personal capacities, and Weeks paid Carnahan the purchase price on February 9, 1996. In the contract, Carnahan agreed to, inter alia, convey his stock certificates in the corporation to Weeks and collect $30,000 worth of the accounts receivables within ninety days of the date of the contract. Carnahan also guaranteed that complete and accurate financial records had been provided to Weeks, to the best of his knowledge. Carnahan and Ressa agreed to assume liability for and hold Weeks harmless on any and all federal, state, county, and city taxes due on or before January 31, 1996.
In addition to the payment of $50,000 to Carnahan, Weeks' obligations under the contract included assumption of the Wells Fargo line of credit account and taking necessary steps to remove and hold Carnahan harmless from the company's accounts with Marathon Oil, Wells Fargo (which was secured by receivables), a G.E. Capital lease for an All Data diagnostic system, and Genuine Auto Parts. There was no provision in the contract addressing how the rest of the accounts payable would be treated, although the parties agree it was a matter frequently discussed during the negotiation period.
On July 23, 1996, Carnahan filed his complaint alleging Weeks had breached the contract by failing to remove and hold Carnahan harmless on the Wells Fargo debt. He prayed specific performance or, in the alternative, money damages. On August 9, 1996, Weeks filed an answer and counterclaimed against Carnahan alleging fraud and breach of contract. Carnahan responded to Weeks' counterclaim and asserted a third-party complaint against Ressa claiming entitlement to indemnity and contribution from him. Ressa, in turn, answered Carnahan's third-party complaint and counterclaimed against him; the counterclaim was later voluntarily dismissed, however, and is of no longer of any import.
On May 7, 1997, Carnahan filed an amended complaint in which he claimed Weeks further breached the parties' contract by failing to relieve Carnahan of his liability on the Wells Fargo account, the G.E. Capital lease for the All Data system, an NBD Equipment lease for an alignment rack, and the shop's DP L account. Carnahan also reasserted his third-party complaint against Ressa. The next day, Weeks filed a cross-complaint against Ressa seeking contribution and alleging Ressa breached a fiduciary duty to Weeks by failing to reveal alleged misrepresentations made by Carnahan. Weeks' answer to Carnahan's amended complaint followed about one week later. Finally, Ressa's answer to Weeks' cross-complaint against him was filed on May 14, 1997.
That same day, a three-day trial began before the magistrate after which she concluded that (1) Carnahan presented no evidence of any harm he suffered as a result of Weeks' failure to remove Carnahan's name from the debts of the corporation and could not, therefore, recover on his breach of contract claim; (2) specific performance prayed for by Carnahan was precluded as a remedy because the terms of the contract relating to Carnahan's claims against Weeks lacked the definitiveness and clarity necessary to grant such relief; (3) Weeks was entitled to specific performance on the transfer of the stock certificates since the contract provision requiring Carnahan to do so was unequivocal; (4) Carnahan's obligation to disclose all pending obligations of the corporation were met by permitting Weeks and Silver access to the corporate records; (5) no clause of the contract required Carnahan to pay in full all debts of the corporation incurred before February 1, 1996, as was claimed by Weeks; (6) federal, state, county, and city taxes due in the amount of $3,575.46 were the responsibility of Carnahan and Ressa and, as a result, Ressa was personally liable to the corporation for half that amount; (7) Weeks' allegation of fraud against Carnahan failed because any reliance by Weeks on Carnahan's representations was unjustified, and Weeks had failed to show Carnahan intended to mislead Weeks in providing certain financial information to him. The magistrate found Carnahan and Weeks jointly and severally liable to Weeks for the back taxes, and ordered Carnahan to transfer his stock certificates to Weeks.
Each party filed objections to the magistrate's decision, upon which we see no need to elaborate. Suffice it to say that the trial court reversed the magistrate's decision insofar as it found Carnahan and Ressa liable to the Weeks for the back taxes. The court reasoned that any property right arising out of the provision of the contract wherein Carnahan and Ressa agreed to shoulder the responsibility for all tax liabilities accruing prior to February 1, 1996, would vest in the non-party corporation, not Weeks personally. The corporation was never joined as a party, so relief by way of a money judgment in its favor was precluded and the magistrate's decision finding Carnahan and Ressa liable to Weeks personally was error. The trial court also found error in the magistrate's denial of Carnahan's request for specific performance, and ordered Weeks to proceed with removing Carnahan's name as a guarantor on the line of credit accounts specified in the contract. The remaining findings by the magistrate were adopted, and all other objections by the parties were overruled.
Weeks filed a timely notice of appeal, advancing six "arguments" which we will construe as assignments of error. First, Weeks claims that the trial court erred in finding that the "Letter of Agreement" constituted a contract. Next, he contends the court erroneously dismissed his claims of fraud against Carnahan. Third, Weeks assigns as error the court's determination that because the corporation was not a party it was not entitled to a judgment against Carnahan and Ressa for the back taxes. Fourth, Weeks claims it was the trial court's obligation to join the corporation as a necessary and indispensable party. Fifth, he contends that the trial court should not have granted Carnahan the remedy of specific performance. Finally, Weeks claims the trial court erred in disallowing testimony concerning vehicle ownership and sales taxes.
In regard to this last assignment of error, we pause to note that Weeks' brief exceeds the page limits set forth in this court's Loc.R. 2.2(A), and that no motion requesting leave to file a longer brief has been filed by counsel for Weeks. Completely contained within the excess pages is Weeks' sixth assignment of error, which we consequently decline to address. While we do not wish to belabor the point, we also observe that Weeks' reply brief was nearly one and a half times longer than is permitted by our Loc.R. 2.2(A) which resulted in its being stricken from the record. Although Weeks' reply brief was later resubmitted in a conforming format, this court's and counsel's time was needlessly consumed on a matter that could have been avoided by counsel's casual review of the local appellate rules. We urge counsel to conscientiously maintain familiarity with the local appellate rules promulgated by this court.
In his brief, Carnahan asserts one "Appellee's Assignment of Error" which we construe as a cross appeal. Therein, he contends the trial court erred in not granting him a money judgment against Weeks just in case Weeks fails to comply with the court's order of specific performance. We find it unnecessary to consider Carnahan's cross-appeal, however, since he failed to file a notice of cross appeal as required by App.R. 3(C)(1). That rule provides that "[a] person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order * * * shall file a notice of cross appeal within the time allowed by App.R. 4." Carnahan seeks to change the trial court's order by arguing that the relief granted to him by the trial court is inadequate. Therefore, he was required to file a notice of cross appeal within thirty days of the entry of the trial court's order or within ten days of the filing of Weeks' notice of appeal. App.R. 4(A) and (B)(1). Since he failed to do so, we are deprived of jurisdiction over his "assignment of error" and are therefore unable to give it consideration. Coy v. Coy
(Oct. 15, 1996), Jackson App. No. 96-CA-777, unreported; InlandRefuse v. Northeast Ohio Harness (Nov. 1, 1990), Cuyahoga App. No. 57606, unreported.
Finally, we feel compelled to mention that Ressa's brief also fails to comply with the appellate rules which require briefs to be double spaced. App.R. 19(A). We are disappointed that, of the four briefs submitted to us in this case, authored by three different attorneys, none were in compliance with the appellate rules and the local appellate rules. Each attorney would benefit from a review of those rules before they find themselves before this court again on this or any other matter. This said, we now proceed to the merits of Weeks' assignments of error.
 I. The trial court erred in finding that the Letter of Agreement ween the parties constituted a valid contract.
 A. The trial court erred in finding that there was the necessary "meeting of the minds" between the parties.
 B. The trial court erred in finding that all essential terms were included.
In his first assignment of error, Weeks argues that, for various reasons, the agreement signed by the parties was not an enforceable contract. As a prelude to our discussion of this assignment of error, however, we note that on appeal, the existence of a contract presents a mixed question of fact and law. McSweeney v. Jackson (1996), 117 Ohio App.3d 623, 632. While we accept those factual findings of the trial court supported by some competent, credible evidence, we freely review application of the law to those facts. Id. In addition, we are guided by a presumption that the trial court's findings are correct, given that the trial judge is best able to observe the demeanor, gestures, and voice inflections of the witnesses, and to determine the witnesses' credibility therefrom. Id.
Weeks first argues that the "Letter of Agreement" was not a contract because there was no "meeting of the minds" between him, Carnahan, and Ressa. We dispose of this argument rather quickly, however, since in his answer and counterclaim, and again in his answer to Carnahan's amended complaint, Weeks admitted the allegations contained in paragraph one of Carnahan's complaint, which reads as follows: "On or about February 1, 1996 Plaintiff and Defendant entered into a Letter Agreement a copy of which is appended hereto as Exhibit A." Weeks reaffirmed his admission by stating on page two of his pre-trial statement to the magistrate that "[i]t is undisputed that the parties entered into a written contract and that the contract was attached to Plaintiff's Complaint."
The fact that the document signed by the parties is referred to as a "Letter Agreement" in Carnahan's complaint does not preclude it from also being a contract. See Vasco Electric, Inc.v. M. Berkowitz Co., Inc. (June 24, 1988), Trumbull App. No. 3869, unreported. "In its legal sense, the word `contract' includes every description of agreement or obligation, whether verbal or written, whereby one party becomes bound to another to pay a sum of money or to perform or omit to do a certain act."Terex Corp. v. Grim Welding Co. (1989), 58 Ohio App.3d 80, 82.
`Weeks' admission in his pleading that a contract was formed is equivalent to proof of the fact. J. Miller Express, Inc. v.Pentz (1995), 107 Ohio App.3d 44, 48. See Civ.R. 8(D). Moreover, because invalidity of a contract is a defense, and has even been characterized as an affirmative defense, see McCabe/Marra Co. v.Dover (1995), 100 Ohio App.3d 139, 147, it was required to have been set forth in the pleadings. Civ.R. 8(B); Civ.R. 12(B). See also Civ.R. 8(C). This, Weeks failed to do, and the defense is thereby waived.
Since Weeks admitted the existence of an agreement in his pleadings, and failed to assert the defense of its invalidity in the pleadings, he cannot prevail on his argument that there was no "meeting of the minds" of the parties and that as a consequence, no contract was formed.
Weeks next argues that the contract was invalid because it did not contain all the essential terms of the parties' agreement. He claims that the disposition of the accounts payable is an essential term of the contract, and that its absence in the writing results in an invalid contract, or no contract at all.
We find, however, that this argument, too, is unconvincing in light of Weeks' admission that a contract was formed, and his failure to assert the defense of the invalidity of the contract in the pleadings, as we discussed above. Even so, we note our recent observation that "[i]n a contract that is not for goods, the essential terms are, generally, the parties to the contract and its subject matter." Nilavar v. Osborn (Mar. 27, 1998), Clark App. No. 97-CA-95, unreported, citing 17 Ohio Jurisprudence 3d 446, Contracts, Section 17. Weeks, for good reason, does not argue that the essential terms identified in Nilavar are absent from the Letter of Agreement.
For the reasons stated above, we find the first two arguments in Weeks' first assignment of error to be meritless.
 C. The trial court erred in finding the parties' breach immaterial.
 D. The trial court erred in finding substantial compliance by Appellee.
Although the above arguments appear in Weeks' first assignment of error which generally challenges the existence of the contract, we find that they are inconsistent with that proposition. Nevertheless, we will consider them on their merits.
Weeks contends that the trial court's finding that Carnahan had breached only one term of the contract, specifically, failing to transfer the stock certificates to Weeks, was erroneous. Weeks claims Carnahan also breached the contractual provisions requiring him to assume liability for and hold Weeks harmless on the corporation's tax obligations accruing prior to February 1, 1996, and that this breach was material.
The term of the contract at issue in Weeks' argument provides that "Seller and Co-owner agree to assume all liability and hold Buyer harmless from any and all federal taxes, state taxes, city taxes and county taxes that have become or may become due as of January 31, 1996 or before." We find this provision curious because payment of the corporate taxes is an obligation of the corporation, not of Weeks personally. In other words, it appears Carnahan and Ressa agreed to hold Weeks harmless on a liability that Weeks had no obligation to pay. In that regard, the contractual term at issue is empty, and it is difficult to imagine how it could be breached, much less be the basis for a material breach of the contract.
The term also states, however, that Carnahan and Ressa agree to "assume liability" for the back taxes. We agree with the trial court's determination that any relief occasioned by Carnahan and Ressa's breach of this contractual term incidentally inures to the benefit of the corporate entity, and not to Weeks in his individual capacity. It is undisputed that Weeks has not personally suffered any damages from Carnahan's failure to pay his portion of the back taxes. As a result, Carnahan's inaction with regard to this term of the agreement cannot be the basis for a finding that Carnahan breached his contract with Weeks. Thus, Weeks' argument that Carnahan materially breached the contract by not paying the back taxes is without merit.
Next, Weeks argues that Carnahan materially breached the contract by failing to disclose all pending obligations and suits or legal actions for which Weeks and Ressa might become liable after the contract date. He also claims Carnahan breached a term of the contract wherein Carnahan warranted that all financial records provided to Weeks were accurate to the best of Carnahan's knowledge. Throughout his argument, Weeks claims both that there were debts he was unaware of at the time he signed the contract, and that certain debts of the corporation were paid from corporate funds prior to execution of the agreement.
The magistrate found that Carnahan's obligation under these provisions of the contract were satisfied by his allowing Weeks and his agent, Silver, the opportunity to examine all corporate and accounting records concerning the repair shop prior to execution of the agreement. Although Weeks claims he was only provided "certain documents" that he contends were false, misleading, and incomplete, he himself testified that he could recall no instance of being denied access to records he had requested. Tr. at 41. In addition, no evidence was submitted at trial to support Weeks' allegation that Carnahan provided him with documents that were falsified. Furthermore, Silver testified that he and the accountant he hired to assist him in evaluating the business were able to prepare profit and loss comparatives for the years 1990 through 1994 from the information they requested from Carnahan. Tr. at 173. At no time did Silver suggest the information was incomplete or insufficient so as to skew or invalidate the profit and loss comparatives. Thus, we find sufficient competent and credible evidence in the record to support the magistrate's finding, as did the trial court before us.
In his final argument under his first assignment of error, Weeks claims the trial court erred in finding Carnahan had substantially performed under the contract. Again, Weeks contends Carnahan's failure to transfer the stock certificates and his failure to pay the taxes due prior to February 1 constitute a breach of the contract. These arguments were dispensed with above. In addition, however, Weeks claims Carnahan also breached the agreement by not collecting $30,000 worth of accounts receivables within ninety days of the date of the contract, as required. Weeks testified that an amount in excess of that figure had been collected after the contract date, however. The magistrate found, and the trial court agreed, that collection of those accounts receivables was a result of efforts made by both Carnahan and Weeks.
We find that the trial court correctly concluded that Carnahan substantially performed under the contract. The fact that his collection of the accounts receivables was not completed until after the time specified in the contract does not negate the fact that the accounts receivables were collected, or that Carnahan's performance under the whole contract was substantial. In addition, we note that the terms of the contract did not make the time of performance of the essence, and that even after the ninety-day period for collection of the receivables had elapsed, Weeks continued to perform under the contract, and accepted the fruits of Carnahan's efforts to perform under the relevant term of the agreement. Thus, the conduct of the parties also fails to indicate that time of performance was of the essence. See Hubbardv. Norton (1875), 28 Ohio St. 116, paragraph four of the syllabus;Snyder v. McArthur (1955), 99 Ohio App. 324, 328. Therefore, we find no error in the trial court's finding that Carnahan had substantially performed under the contract.
Having found no merit to the arguments presented under Weeks' first assignment of error, it is hereby overruled.
 II.
The trial court erred in dismissing all of Appellant's claims of fraud.
In his next assignment of error, Weeks claims the magistrate and, subsequently, the trial court, erroneously determined that Weeks' claims of fraud against Carnahan failed because Weeks had not shown that any reliance he placed on Carnahan's representations as to the financial condition of the business was justified. We disagree.
The magistrate's decision correctly stated the elements of an action sounding in fraud as follows:
 1. A representation, or concealment of a fact if there is a duty to speak,
2. which is material to the transaction,
 3. made falsely, with knowledge of its falsity, or made in utter disregard and recklessness as to its veracity,
4. with intent to mislead another,
 5. justifiable reliance upon the representation or concealment,
 6. a resulting injury proximately caused by the reliance.
Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus. When determining whether reliance is justifiable, courts consider "the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relationship of the parties, and their respective knowledge and means of knowledge."Renner v. Derin Acquisition Corp. (1996), 111 Ohio App.3d 326,340, citing Finomore v. Epstein (1984), 18 Ohio App.3d 88, 90.
The magistrate noted that Weeks was given an opportunity to examine all the business records and financial documents for the repair shop, to which we add that Weeks also observed the operation of the shop, including the payment of bills, etc., without restriction from about November 1995 to the date of the contract's execution. Weeks, therefore had ample opportunity to investigate the financial condition of the business and discover any discrepancies that may have existed between Carnahan's representations and the documents.
The evidence adduced at trial provides ample support for the trial court's adoption of the magistrate's finding that any reliance by Weeks on Carnahan's representations was unjustified. As was noted above, Weeks testified that he was provided with everything in the way of documents he requested from Carnahan prior to signing the contract. In addition, he observed Carnahan paying the bills and setting some of them aside for mailing after the contract was signed due to insufficient funds in the checking account. Weeks also had the assistance of his agent, Silver, and the accountant employed by Silver in determining the financial condition of the business. Also, as one who had previously owned his own service station, Weeks was not a neophyte in the business world.
Even more telling, however, is Silver's testimony in which he stated that the tension between the parties increased in January prior to signing the contract, and that heated discussions between the parties took place over the accuracy of Carnahan's accounting process, the lack of any accounting ledgers, and alleged misrepresentations in the financial documents. Rob Weeks testified that during the negotiations, in which he participated with his father and Silver, he did not trust Carnahan, and Silver, Weeks, and Rob all stated that prior to signing the contract they were aware the company's tax returns did not match the financial records they reviewed. Carnahan explained the discrepancy by stating that he didn't claim all the cash income from the business on the corporate income tax returns.
Under these circumstances, any reliance by Weeks on Carnahan's representation as to the financial condition of the business was unjustified. The parties were not fiduciaries, and had opposing interests in the transaction. In fact, from the testimony given by Silver, and Weeks' knowledge that the financial records were not consistent with the tax returns of the business, it can be concluded that in the month preceding execution of the contract the relationship between Carnahan and Weeks was one fraught with distrust. Moreover, both Carnahan and Weeks were experienced businessmen and had knowledge of accounting principles sufficient to run a small business. If anything, Weeks had an advantage in that respect since he had the benefit of Silver's and Silver's accountant's expertise, experience, and advice throughout the contract negotiations. Therefore, we find the evidence supports the magistrate's conclusion that any reliance Weeks placed on Carnahan's representations was unjustified.
Accordingly, Weeks' second assignment of error is overruled.
 III.
The trial court erred in not finding Appellee and Third Party Defendant Ressa responsible for tax liabilities.
In his third assignment of error, Weeks challenges the trial court's finding that Carnahan and Ressa could not be ordered to pay damages in the amount of the back taxes to the corporation because of its non-party status. He creatively argues that the corporation is a third party beneficiary, and claims that as such, the corporation's rights under the contract can and should be enforced. We observe, however, that no such argument was presented at any stage of the litigation prior to its advancement before us, and no prayer for relief in the various pleadings contained any request for damages on behalf of the corporation. As such, Weeks' argument now that the corporation should be entitled to damages has been waived. Furthermore, even if the corporation were entitled to damages under the contract, its right to enforcement would have to be asserted by the corporation itself, not by Weeks in his individual capacity, as he attempts to do here.
Moreover, even if the corporation had asserted such a claim, we are not convinced that it is a third party beneficiary of the contract. A third party beneficiary achieves its status by a promisee's intent to benefit the third party via the contract.Visintine Co. v. New York, Chicago, St. Louis RR. Co. (1959),169 Ohio St. 505, 509-10; Hill v. Sonitrol of Southwestern Ohio,Inc. (1988), 36 Ohio St.3d 36, 40. Here, the contract states that "Seller and Co-owner agree to assume all liability and hold Buyer harmless from any and all federal taxes, state taxes, city taxes and county taxes that have become or may become due as of January 31, 1996 or before." Nothing therein indicates Carnahan and Ressa possessed any intent to directly or primarily benefit a third party. Instead, it evidences a clear intent to benefit Weeks personally by holding him harmless in his individual capacity on the tax liabilities described. Furthermore, nothing in the record supports Weeks' contention that Carnahan and Ressa intended to benefit the corporation through any provision of the contract.
In any case, because we conclude that the question of whether the corporation is a third party beneficiary under the contract has been waived, Weeks' third assignment of error is overruled.
 IV.
The trial court erred in not joining all necessary and indespinsible [sic] parties to the action.
In his fourth assignment of error, Weeks claims the trial court erred in failing to join the corporation in the lawsuit. Joinder of the corporation was not needed for just adjudication as described in Civ.R. 19(A), however, and we consequently overrule Weeks' assigned error.
Civ.R. 19(A) provides, in part, as follows:
 A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties * * *.
Both Weeks and Carnahan asserted the defense of failure to join a party in one or more of their respective pleadings. Neither, however, ever moved the court for dismissal on that ground or any other, nor did either party present any evidence or argument to the magistrate to support their contentions that joinder of the corporation was needed for just adjudication. Whether or not the parties thereby abandoned the asserted defense, however, need not be resolved because we conclude that joinder of the corporation was not necessary for just adjudication.
Weeks claims the corporation should have been joined so that (1) "all parties in interest can be bound by any decision or resolution made by the Court, and [(2)] complete relief may be granted." Appellant's Brief at 28. Since Civ.R. 19(A) does not authorize joinder of a party for the first reason advanced by Weeks, however, we need only address his second.
Weeks contends the corporation should have been joined to ensure complete relief. As was stated above, however, Civ.R. 19(A) requires joinder of a person only if his or her absence from the suit precludes complete relief among those already parties. Weeks does not explain how nonjoinder of the corporation denied complete relief to any of the parties to the suit. Thus, we are unconvinced that the magistrate erred in not joining the corporation, or that the trial court erred by overruling Weeks objections on that basis.
Accordingly, we find Weeks' fourth assignment of error to be without merit.
 V.
The trial court erred in granting specific performance.
In his fifth assignment of error, Weeks argues that because the contract was, in his view, ambiguous and fraught with misrepresentation and fraud, and because Carnahan was allegedly in breach of several of its terms, the order compelling specific performance by Weeks was unjust and inequitable. It may be recalled that Weeks was ordered to specifically perform by making "appropriate changes to the lines of credit" withdrawing Carnahan as the guarantor on certain accounts.
We, like the magistrate and the trial court, have found no merit to Weeks' contentions that Carnahan committed fraud or misrepresentation during the negotiations or formation of the contract. Therefore, we can sustain Weeks' assignment of error only if we are convinced that the trial court abused its discretion in finding the contract sufficiently free from ambiguity to justify granting specific performance. We are not so convinced.
In Tickel v. Shock (1947), 80 Ohio App. 459, 463, we stated that to provide a party relief in the form of specific performance, the terms of the contract at issue "must be complete and free from doubt or ambiguity and must make the precise act which is to be done clearly ascertainable." In addition, we noted that:
 In order that a court of equity shall exercise its power to decree a specific execution, where there has been a part performance, the contract itself must be clear, certain, and unambiguous in its terms, and must either be admitted by the pleadings, or proved, with a reasonable degree of certainty, to the satisfaction of the court. If, therefore, upon all the evidence given by both parties, the court is left in doubt as to the entire contract, or even as to any of its material terms, it will not grant the remedy, although a partial performance of something has been sufficiently proved.
Id. at 463-64, quoting Pomeroy's Specific Performance of Contracts, Third Edition 1926, 350, Section 136. That is not to say, however, that every term must be present and unambiguously stated for specific performance to be appropriately granted. Mr.Mark Corp. v. Rush, Inc. (1983), 11 Ohio App.3d 167, 170. So long as the contract contains the essential terms of the parties' agreement expressed with such clearness and certainty that they may be understood, specific performance may be granted by the court. Id. at 170-71.
Here, the trial court found the contract imbued with sufficient clarity and certainty to permit an order of specific performance. This finding is supported by the contract itself and by the parties' testimony that Carnahan agreed to transfer his stock certificates to Weeks, and Weeks was to remove Carnahan's name from the credit accounts specified in the agreement. No ambiguity exists in the terms of the contract addressing these obligations, nor are they uncertain. On the contrary, they easily provide a basis for determining the existence of a breach and for giving the remedy of specific performance. See Mr. Mark, supra at 169.
For the foregoing reasons, Weeks' fifth assignment of error is not well taken.
Having addressed all of Weeks' arguments contained within the pages of his brief that conform to the local appellate rules and found them to be without merit, we overrule his assignments of error and affirm the judgment of the trial court.
GRADY, P.J. and WOLFF, J., concur.