MR. MARK CORPORATION, APPELLEE, *v.*
RUSH, INC. ET AL., APPELLANTS.

(No. 45936—Decided July 21, 1983.)

*Mr. George Braun,* for appellee.
*Mr. Eugene Stevens,* for appellants.

MARKUS, P.J. Defendant corporation and its president appeal from a trial court judgment ordering specific performance of a contract for the sale of their restaurant business. They claim that the alleged contract was only a preliminary agreement in the course of negotiations, that its terms were too vague and uncertain for enforcement, and that the trial court's equitable order improperly directed action beyond the purported agreement. They also argue that the plaintiff corporation failed to establish its right to enforce the alleged contract as an assignee of the original contracting party. We disagree with those contentions, so we affirm the trial court's judgment.[1]

On January 6, 1982, plaintiff's alleged assignor (Mark Figetakis) and defendant's president and sole stockholder (Charles Rushefski) signed a realtor's "Purchase Agreement" for a Strongsville restaurant in leased premises and "all outstanding capital stock" of the defendant-corporation for $90,000. The sales agent for defendants' broker completed that single page printed form with handwritten terms before the parties signed it, and he signed as a witness to each of their signatures. In its totality the document contains approximately eight hundred words in seventeen numbered paragraphs, six unnumbered paragraphs, and titles for different segments. The body of that document is set forth in the Appendix to this opinion.

At the nonjury trial, plaintiff's principals (Mark Figetakis and Eleseos Markos) testified that they considered the "Purchase Contract" to be a binding contract. Defendant's president and its sales agent (Herbert Atwell) testified that they considered it to be a preliminary document which was the basis for later more concrete terms.

No one claimed and no witness testified that anyone contemplated a replacement document which would incorporate all the terms of the sale. However, all witnesses described further negotiations conducted by the signatories and their representatives until the end of

---

[1] Plaintiff's complaint sought both specific performance of the alleged contract and damages for defendants' delay in transferring the business. The trial court deferred any determination of the damage claim until defendants' compliance with the court's equitable order permitted an assessment of the nature and extent of plaintiff's right to damages for delay. This court has jurisdiction by reason of the trial court's later certification that the equitable order was a final judgment pursuant to Civ. R. 54(B).

April, concerning additional terms and procedures. On May 3, 1982, defendants sent plaintiff's principals a letter which purportedly cancelled the sale. On May 19, 1982, plaintiff filed this suit.

The defendants argue that those negotiations were essential to a complete agreement, and that the parties' failure to reach agreement on additional terms precluded any binding contract. Plaintiff contends that the later negotiations sought to implement an already binding contract by resolving any differences about its application.

The subjects which were not resolved during those later negotiations were (1) whether the promissory note for the $65,000 balance of the purchase price after the agreed down payment would include cognovit provisions, (2) whether that note would be signed or guaranteed by the plaintiff's principals personally as well as in their corporate capacity, (3) whether the agreed security interest for that note would apply to the company stock as well as its business assets, (4) whether the defendants would be listed in a loss payee endorsement for a fire loss insurance policy, (5) whether an otherwise approved temporary "management agreement" would extend for ninety days rather than to the time the liquor license transferred, (6) whether the $25,000 down payment would be released to defendants from escrow when plaintiff assumed possession under the temporary "management agreement" rather than when the liquor license and the business title transferred, and (7) whether defendants' principals would remain personally responsible for the lease obligations as the landlord requested.[2]

The trial court's judgment entry includes some factual findings and directs the parties to accomplish specific activities through the execution and delivery of designated documents, all in furtherance of the original "Purchase Agreement" which the court ruled sufficient to merit "specific performance and other equitable relief." No party requested separate findings of fact and conclusions of law, and the court supplied no further findings.

I

Defendants contend that the alleged agreement was not sufficiently certain to constitute an enforceable contract, or that it was not sufficiently definite to permit a specific performance decree.[3]

---

[2] At an evidentiary hearing on defendants' motion for new trial, the court received testimony that defendants made a later sales agreement with another purchaser, who had taken possession without a completed sale before the original trial; and that the landlord had withdrawn consent for defendants' assignment of the lease to plaintiff or its principals. Defendants offered that evidence to support a claimed impossibility for performance of the sale to plaintiff. The court apparently rejected the impossibility claim, since it executed the challenged judgment approximately a month after the new trial hearing. Defendants assign no error and make no argument regarding those matters, in this court.

We express no opinion whether the trial court can effectively enforce the order, when the court has no present jurisdiction over the landlord or the state liquor control department. Those matters will be resolved on remand.

[3] Four of defendants' assigned errors concern this subject:

"I. The trial court erred in finding an enforceable and binding contract was entered into between Mark Figetakis and defendants, Rush, Inc. and Charles Rushefski."

"IV. The trial court erred in its finding that defendants breached the purchase agreement."

"V. The trial court erred in granting specific performance of the purchase agreement and in writing a new contract."

"VI. The trial court erred in granting judgment for plaintiff for the reason that the judgment was and is against the manifest weight of the evidence."

## A
## Certainty

An agreement is enforceable if it encompasses the essential elements of the bargain. Cf. *Reck* v. *Daley* (1943), 72 Ohio App. 307, at 315-317; *Stiegelmeir* v. *West Side Deutscher Frauen Verein* (App. 1961), 88 Ohio Law Abs. 97, at 98-99; *Perlmuter Printing Co.* v. *Strome, Inc.* (N.D. Ohio 1976), 436 F. Supp. 409. Omission of less central subjects leaves those matters for later agreement or judicial resolution. The courts will not create significant additional obligations for either party, nor excuse either party from performance of agreed duties.

When the parties have agreed about issues critical to the transaction, the courts will determine the meaning of ambiguous terms according to the parties' mutual understanding, the custom and practice in the trade or community, or other established legal principles. Cf. *Eckenroth* v. *Dowd-Feder, Inc.* (App. 1941), 35 Ohio Law Abs. 409, at 412; *Da Rocha* v. *Macomber* (1953), 330 Mass. 611, 116 N.E. 2d 139; *Marek* v. *McHardy* (1958), 234 La. 841, 101 So. 2d 689.

Similarly, the courts will supplement the parties' express or implied agreement about those essential elements with other terms implied by custom and practice or consonant legal doctrines. See *Litsinger Sign Co.* v. *American Sign Co.* (1967), 11 Ohio St. 2d 1, at 14 [40 O.O.2d 30]; *Born* v. *Hammond* (1958), 218 Md. 184, 146 A. 2d 44.

The modern view of contractual certainty is well expressed in Restatement of the Law 2d, Contracts (1981) 92, Section 33:

"§ 33.  Certainty

"(1)  Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

"(2)  The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

"(3)  The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance."

See, also, Corbin, Contracts (1963), Section 95.

Comment *a* to Section 33 of the Restatement adds:

"* * * [T]he actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. In such cases courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain.

"An offer which appears to be indefinite may be given precision by usage or trade or by course of dealing between the parties. Terms may be supplied by factual implication, and in recurring situations the law often supplies a term in the absence of agreement to the contrary. * * * Where the parties have intended to conclude a bargain, uncertainty as to incidental or collateral matters is seldom fatal to the existence of the contract."

Comment *f* to Section 33 notes at page 95:

"The more important the uncertainty, the stronger the indication is that the parties do not intend to be bound; minor items are more likely to be left to the option of one of the parties or to what is customary or reasonable."

The legislature has adopted similar principles for sales of personalty, in the Uniform Commercial Code. R.C. 1302.07. That legislatively demonstrated public policy should apply equally here.

In this case, the parties executed a document which described with reasonable certainty (a) the business and stock being sold, (b) the total price, (c) the down payment, (d) the interest rate and time for payment of the balance, (e) the obligation to provide and the priority of a security in-

terest for that balance due, (f) the time and method for establishing an escrow, (g) the nature of the bill of sale and bulk transfer affidavit, (h) seller's duty regarding taxes, (i) proration of specified fees, taxes, and insurance premiums, (j) risk of loss for fire before transfer, (k) restraint on competition by seller, (l) seller's warranty about business licenses, (m) the items included with the business being sold, and (n) the amount and responsibility for the agent's commission.

The document then states:

"13. This offer of purchase shall constitute a binding contract between BUYER and SELLER, their heirs, personal representatives, successors or assigns upon the written acceptance of same by the SELLER. * * *

"* * *

"No statements or representations, except those stated in this agreement shall be binding on either of the parties hereto."

When defendant's president signed the acceptance portion of the document, he manifested an intention to make a binding contract. The document covers the essential elements of the transaction. It establishes "a basis for determining the existence of a breach and for giving an appropriate remedy." See Section 33, *supra.*

Indeed, it appears to be a fully integrated document which precludes oral testimony about the parties' intentions, except as that testimony may assist the court in resolving any ambiguities. Cf. *Charles A. Burton, Inc.* v. *Durkee* (1952), 158 Ohio St. 313 [49 O.O. 174]; *Yoder* v. *Columbus & Southern Ohio Electric Co.*

(1974), 39 Ohio App. 2d 113 [68 O.O.2d 288].

However, the court did receive oral testimony about their intentions, and resolved conflicts in that evidence to find:

"Defendants entered into a written agreement on January 6, 1982, wherein they agreed to sell to one Mark Figetakis, the shares of stock of Rush, Inc., and its tavern business * * *."

That finding is sufficiently supported by the record. It is not contrary to the manifest weight of the evidence. To the extent that the court thereby found no condition precedent which remained unsatisfied, it is likewise sufficiently supported by the evidence.[4]

### B
### The Remedy

Specific performance may be precluded when significant terms are omitted or remain uncertain, even though the contract is enforceable by awarding damages for its breach. *McLean* v. *Fox* (1931), 40 Ohio App. 29. Here again, comment *b* to Section 33, *supra,* at page 92, is instructive:

"In some cases greater definiteness may be required for specific performance than for an award of damages; in others the impossibility of accurate assignment of damages may furnish a reason for specific relief."

See, also, Corbin, *supra,* at 410.

Even for specific performance, every term need not be present or unambiguously stated. Cf. *Reck* v. *Daley, supra* (contract to convey a leasehold is specifically enforceable despite minimal terms); *Baker* v. *Dawson* (1958), 216 Md. 478, 141

---

[4] Paragraphs 16 and 17 of the agreement could be conditions precedent, and parol testimony would be allowed to resolve their status. See *Blaha* v. *Schwartz* (Feb. 22, 1980), Cuyahoga App. No. 40197, unreported. The evidence supported findings that the temporary management agreement left open in Paragraph 16 was not a condition precedent, and that the conditions for plaintiff's financing and lease assignment were satisfied or satisfiable. Further, the court had sufficient basis to find that these terms were for plaintiff's exclusive benefit, and that plaintiff had elected to waive them to the extent necessary to enforce the sale.

A.2d 157 (same remedy allowed for land sale contract when terms for agreed purchase money mortgage failed to specify treatment for taxes, insurance, and other matters commonly covered in such documents); *Da Rocha* v. *Macomber, supra* (agreement for lease of pool room equipment subject to specific enforcement despite omissions and ambiguities).

Restatement of the Law 2d, Contracts (1981) 179, Section 362, uses the same principle as Section 33, *supra:*

"§ 362. Effect of Uncertainty of Terms

"Specific performance or an injunction will not be granted unless the terms of the contract are sufficiently certain to provide a basis for an appropriate order."

Comment *b* to Section 362 further explains:

"If specific performance or an injunction is to be granted, it is important that the terms of the contract are sufficiently certain to enable the order to be drafted with precision because of the availability of the contempt power for disobedience. Before concluding that the required certainty is lacking, however, a court will avail itself of all of the usual aids in determining the scope of the agreement. See Chapter 9, The Scope of Contractual Obligations. Apparent difficulties of enforcement due to uncertainty may disappear in the light of courageous common sense. Expressions that at first appear incomplete may not appear so after resort to usage (§ 221) or the addition of a term supplied by law (§ 204)."

In the exercise of its equitable jurisdiction, a trial court has reasonable discretion to direct the parties in procedures which will implement the court's basic decree. Thus, when a trial court properly orders specific performance for a contract, the court may establish and direct procedures to accomplish that performance, so long as those procedures neither add to nor detract from significant obligations of the parties which have been established by the contract as shown by evidence and judicial construction.

In the present case, the agreement provided sufficient certainty for the court to frame the decree issued. We will not substitute our judgment for the trial court's construction of the contract, when it is sufficiently supported by the evidence. Cf. *Toth Auto Lease, Inc.* v. *Palladina* (Jan. 27, 1983), Cuyahoga App. No. 44965, unreported.

Defendants' complaints about certainty (see list on page 168, *supra*) were resolved by the written agreement or the trial testimony. The evidence supported the trial court's implicit findings that certain terms sought by defendants were not part of plaintiff's obligations: cognovit language in the promissory note, personal undertakings or guarantees by plaintiff's principals, a security interest in corporate stock as well as the business assets, a loss payee endorsement in the fire policy.

Other terms claimed by defendants were rendered moot by the court's apparent decision that the temporary management agreement was not required by the agreement or waived by the party for whose benefit it was included: the duration of that agreement, and the relation of that agreement to the time for release of escrow funds.

Any uncertainty about continuing responsibility by defendants' principals for the lease obligations was resolved by the nature of the transaction, since those principals had already agreed to that responsibility so long as defendant-corporation remained in possession and plaintiff's acquisition of the stock for defendant-corporation would cause it to remain as the tenant.

Further, the court could well have found that defendants waived their right to any claimed terms which allegedly impaired their reciprocal ability to obtain enforcement, by their anticipatory breach when they sent a purported notice that the contract was cancelled. While the trial court did not make all the above findings

explicitly, we are obliged to affirm the judgment where it is supportable by any reasonable findings which could be made from the evidence. If defendants had requested findings of fact pursuant to Civ. R. 52, we would have been able to test the judgment against the explicit findings, as well as the evidence.

Defendants' real complaint is the failure of the agreement to provide safeguards which they later deemed reasonable.[5] The trial court did not rewrite the contract to satisfy the demands of either party, regardless of their reasonableness. Instead, the court implemented its specific performance order by procedures consistent with the agreement it found from the evidence.

Defendants' first, fourth, fifth, and sixth assigned errors are overruled.

## II

Defendants' remaining assigned errors concern plaintiff's status as assignee of the rights acquired under the contract signed by its principal, Mark Figetakis.[6] Paragraph 14 of the signed "Purchase Agreement" provides:

"This offer of purchase when accepted by SELLER may be assigned to any person, firm or Corporation by BUYER and upon any such assignment if any, the assignor shall be released of all duties and obligations hereunder."

Figetakis and defendants' sales agent (Atwell) testified about their conversations before and after the document was signed, concerning Figetakis' possible assignment of the purchase rights to another business entity. Defendants argue that the assignment was not established by the evidence because that specific written document was absent from the evidence.

The record includes the written resolution by the directors of plaintiff-corporation to accept that assignment and the corporation's written acceptance of the assignment, both of which were dated May 17, 1982, and both of which were signed by Figetakis as director and president. Plaintiff's principals (Figetakis and Markos) both testified that the assignment had been planned shortly after the "Purchase Agreement" was signed and had been accomplished before this suit was filed.

Nothing in the record reflects that defendants challenged the assignment at trial, except their denial in the answer. However, defendants now argue that plaintiff is precluded from relying on an assignment which was not physically presented at trial, by reason of the Statute of Frauds. R.C. 1302.04 and 1335.05.

Those code sections prevent recovery on certain contracts "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker" (R.C.

---

[5] Defendants do not challenge the propriety of specific performance if the contract is sufficiently certain to justify that relief. The agreement concerned a unique business location which would be operated by new personnel under untested circumstances, and stock for a closely held corporation. Plaintiff had no adequate remedy at law by damages for the loss of that business and stock, since the damages would be most difficult or impossible to assess. Cf. *Barton* v. *Aydin* (Nov. 25, 1981), Cuyahoga App. No. 43453, unreported (specific performance justified for contract to sell stock of closely held corporation); *Abdulla* v. *Matasy* (App. 1961), 89 Ohio Law Abs. 221 (same remedy for real estate sales contract).

[6] Those claimed errors assert:

"II. The trial court erred in finding that Mr. Mark Corp. was the legal assignee of Mr. Mark Figetakis."

"III. The trial court erred by finding a proper assignment where the assignee, plaintiff, took the instrument subject to all defenses."

1302.04[A]) or "unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some person thereunto by him or her lawfully authorized" (R.C. 1335.05). Since no one seeks to enforce a claim against plaintiff or Figetakis based on the assignment, these statutes have no application here. If they did have relevance, their requirements were satisfied by the evidence in this case.

Defendants also argue that R.C. 1309.37 prevents plaintiff from recovery as an assignee, because plaintiff failed to give defendants timely notice of the assignment and failed to provide "reasonable proof that the assignment has been made" when so requested by defendants' denial in their answer. That section has no apparent significance to the transaction involved here, since it controls assignments of security interests.

Further, the evidence supports findings that plaintiff and its principals gave early notice of the assignment to defendants' agents and representatives, including their sales agent and their counsel who drafted documents which fully recognized that plaintiff would be the party acquiring defendants' interests. Indeed, the complaint in this case was itself notice that the challenged assignment had been accomplished. Likewise, the evidence supports a finding that plaintiff proved the assignment had been accomplished.

Finally, defendants cite R.C. 1309.37 and contend that plaintiff is thereby barred because plaintiff's assignor (Figetakis) was barred from recovery. Again, that code section is inapplicable here. However, an assignee may well receive no greater rights than its assignor held. The alleged defense against Figetakis concerns his refusal to accept personal responsibility for the assignee's obligations as the buyer and his related failure to deposit documents in escrow within the time allotted by the underlying "Purchase Agreement." Defendants urge that

Figetakis thereby lost any rights to assign, before the assignment was made and before defendants purportedly cancelled the contract.

However, the original "Purchase Agreement" quoted above relieves the assignor-buyer from any personal responsibility after an assignment, and imposes no time limit for such an assignment. There was no showing, and defendants do not claim, that they relied on Figetakis' credit standing when the agreement was made.

Similarly, there was no showing that time was of the essence for the deposit of documents in escrow, and the trial court could well have found that defendants' negotiation demands unreasonably deterred earlier action by Figetakis. Thus, the court could properly conclude that Figetakis had not breached the agreement by his failure to deposit documents at an earlier time.

Defendants' second and third claimed errors are overruled, and the trial court's judgment is affirmed.

*Judgment affirmed.*

HOFSTETTER and WRIGHT, JJ., concur.

HOFSTETTER, J., of the Eleventh Appellate District, and WRIGHT, J., of the Court of Common Pleas of Franklin County, sitting by assignment in the Eighth Appellate District.

## APPENDIX

### "PURCHASE AGREEMENT[7]

"The undersigned (hereinafter called BUYER) hereby agrees to purchase the following described business FRANCESCA'S OTHER PLACE PLUS ALL

---

[7] Underlining indicates handwritten material inserted in blanks.

OUTSTANDING CAPITAL STOCK OF CORP. situated in the City of STRONGSVILLE, County of CUYAHOGA and State of OHIO and known for street purposes as 14179 PEARL RD.

"For which BUYER agrees to pay the SELLER or SELLERS (hereinafter called SELLER) for said business the sum of NINETY THOUSAND ---------------- 00/100-------- Dollars $90,000.00 upon the following terms and conditions:

"(1) Ernest [*sic*] money, in hand, to apply on the purchase price
(note) (check) (cash)        $ 9,000 NOTE

"(2) Additional cash to be deposited in escrow. . . . . . . . . . . . . . 16,000

"(3) Obtain loan from whomever will make same in the amount of. . . . . . . . . . . . . . . . . . . 65,000
TO BE CARRIED BY THE SELLER SECURED BY A SECOND SECURITY INTEREST AT 10% INTEREST PAYABLE IN 96 EQUAL MONTHLY INSTALLMENTS OF 986.33 PER MONTH.

"(4) Balance in the amount of. . . . . . . . . . . . . . . . . . .$

"(5) All funds and/or loan commitments per items (2) and (3) above, and all documents then required shall be deposited in escrow with a mutually appointed escrow agent within 60 days of the acceptance herein. Until the parties hereto shall mutually appoint said escrow agent, seller and buyer hereby agree that P.R.C. [the broker] may hold said funds, documents and loan commitments and act as escrow agent herein.

"(6) A list of fixtures, furniture and equipment shall be attached hereto marked Exhibit 'A' and made a part hereof upon acceptance of this Purchase Agreement by the SELLER.

"(7) The SELLER shall make, execute, and deliver a bill of sale conveying title free and clear of all security interests and liens togther with an affidavit in compliance with Section 1306.01 to 1306.09 of the Ohio Revised Code known as the Bulk Transfer Act, and any other legal instrument required by law necessary to give BUYER peaceful possession and good title.

"(8) The SELLER shall save harmless the BUYER from any and all Federal, State and Local taxes and shall deliver to BUYER certificates from the respective governmental authorities showing that SELLER has paid all Personal Property and Sales Taxes. Escrow agent is authorized to withhold funds from seller to guarantee tax releases.

"(9) License and permit fees, personal property tax, rental deposits, rentals, escrow fees if applicable and prepaid insurance premiums, if assumed, shall be prorated as of the date of transfer. Closed stock in trade not included in purchase price above and is to be purchased by BUYER at wholesale price at time of transfer.

"(10) In the event that this business is destroyed by fire partially or in its entirety, BUYER may have the option of collecting the insurance, and fulfilling this contract or treating this contract as null and void.

"(11) The SELLER agrees (and if a corporation agrees to cause its officers and stockholders) not to engage either directly or indirectly in the same or similar business as mentioned herein, with a radius of 1 miles from said location for a period of 1 years, after possession of business by BUYER, which possession shall be the date of legal transfer.

"(12) The SELLER warrants that all licenses of this business are in good standing. The BUYER warrants he is qualified to have said licenses issued and/or transferred to him, this offer is contingent upon same and in the event of default transfer shall be presumed.

"(13) This offer of purchase shall constitute a binding contract between BUYER and SELLER, their heirs, personal representatives, successors or assigns upon the written acceptance of same by the SELLER. Subject to the terms hereof, upon acceptance of BUYER'S offer by SELLER, BUYER and SELLER agree that P.R.C. shall be due its commission hereunder. Monies deposited with the broker and/or deposited in escrow hereunder shall be first applied to the payment of said commission and the defaulting party shall reimburse the damaged party said amount.

"(14) This offer of purchase when accepted by SELLER may be assigned to any person, firm or Corporation by BUYER and upon any such assignment if any, the assignor shall be released of all duties and obligations hereunder.

"(15) The Purchase Price to include: Fixtures, Equipment, Goodwill, all licenses now a part of the above business, INCLUDING LIQUOR LICENSE AND SUPPLIES (FOOD AND LIQUOR INVENTORY EXCLUDED.)

"(16) BUYER AND SELLER TO ENTER INTO A STANDARD MANAGEMENT AGREEMENT WHEN 25,000.00 IS PLACED IN ESCROW.

"(17) SUBJECT TO LEASE AND FINANCING.

"This offer, which all parties hereby acknowledge a full and complete copy of shall be open for acceptance by the SELLER for 7 days and if not accepted the above mentioned deposit shall be returned to the BUYER with no liability to any party or parties.

"No statements or representations, except those stated in this agreement shall be binding on either of the parties hereto.

"Signed as my free act and deed this 6th day of Jan., 1982.

"WITNESS (S) Herbert H. Atwell

"WITNESS_____

    "(S) Mark Figetakis BUYER

    "_____ BUYER

"DEPOSIT RECEIPT

"Acknowledgement is hereby made of the deposit of _____ Dollars $9,000 NOTE above mentioned, subject to the terms hereof, which is to be deposited in escrow or held in trust by the broker until the transaction is complete.

    "By (S) Herbert H. Atwell

    "Precision Realty Company

"ACCEPTANCE

"The above offer is hereby accepted this 6th day of Jan., 1982 and the undersigned agree to comply with all the terms and conditions herein stated and to pay PRECISION REALTY CO. a commission of 9,000.00 ( ). PRECISION REALTY CO. is hereby authorized by the SELLER to collect their commission out of funds in escrow or collect them from earnest monies delivered to them in connection with this transaction.

"WITNESS _____

"WITNESS (S) Herbert H. Atwell

(S) Rush, Inc., Charles J. Rushefski, Pres.

SELLER"