OPINION
Plaintiff-Appellant James R. Tippen is appealing the Montgomery County Common Pleas Court's decision granting summary judgment to Mead Corporation ("Mead").
In 1986, Tippen began working for Mead and in 1989 he was transferred to the Zellerbach Division ("Zellerbach") which dealt with the sale and distribution of printing, packaging and industrial supply products. Mead placed Zellerbach up for sale in April of 1998, and eventually sold Zellerbach to International Paper ("xpedx") on July 31, 1998. Tippen's position in 1998 through the sale of Zellerbach was as the Director of Financial Services and Controller.
In order to ensure an easy transition and to obtain necessary financial, marketing and other business information, Mead communicated the proposed deal and offered a retention bonus package to "key employees." Mead included these key employees in the confidentiality of the sale to help maintain continuity and a stable business atmosphere, and to prevent these individuals from leaving Zellerbach. The key employees consisted of five Executive Staff members who reported directly to Peter Vogel, president of Zellerbach, along with John Eaton and Tippen, who did not report directly to Vogel.
On April 14, 1998, Mead provided the key employees with a document entitled "Retention and Severance Benefits." Attachments to the letter stated that the employees would be entitled to the retention benefits if they extended their "best efforts" to assist with the buyout. Tippen's retention benefits were described as six to twelve months of his salary, depending upon his level of contribution during the sale process. Tippen signed the document on April 17, 1998. Several subsequent meetings were held to clarify and explain the duties required of the employees. At the April 22, 1998 meeting, Tippen became aware that the other key employees' retention benefit proposals had amounted to one to two times their salaries. Tippen spoke with Vogel several times after the meeting to see if anything could be done to increase his benefits. Vogel told Tippen that he would consult Mead executives Tom Palmer and Ray Lane to see what could be done, but that he could not make any unilateral decisions. Palmer and Lane never authorized an increase in Tippen's retention benefits. At the end of the process, Tippen was found to have done a great job and he had received twelve months salary as his retention benefit.
Tippen filed a complaint on July 16, 1999 for breach of contract and fraud. Mead denied Tippen's claims and filed a motion for summary judgment on May 5, 2000. Mead argued that summary judgment should be granted because Tippen and Mead had entered into a contract stating that Tippen would receive a retention bonus of six to twelve months salary for asserting his "best efforts" during the sale process with xpedx. Mead asserted that the fraud claim should fail because Tippen had failed to allege a false representation of fact, had failed to establish justifiable reliance, and had been unable to identify damages caused by any alleged misrepresentations.
Tippen argued that a genuine issue of material fact existed as to whether the April 14, 1998 correspondence was a contract. He claimed that there was no meeting of the minds to form the contract because additional information was necessary for the parties to understand the details of the agreement. Tippen also contended that the April 14, 1998 document was not an "accurate integration" of the terms between himself and Mead. Finally, Tippen asserted that Vogel's communications regarding Tippen's potential to receive two times his salary if he performed to Mead's satisfaction was a "fraudulent inducement" to make Tippen remain until after the sale of Zellerbach to xpedx.
The trial court sustained Mead's motion for summary judgment, finding that a valid contract had existed between the parties and that there was a lack of "new consideration" to support the modification to increase Tippen's retention benefits. The trial court also granted summary judgment on Tippen's fraud claim, as Tippen had failed to establish Mead's intent to mislead him. In particular, the trial court found that Tippen had failed to prove the element of justifiable reliance because Vogel had told Tippen that he had needed Palmer and Lane's approval to modify Tippen's benefits arrangement.
Tippen now appeals the trial court's decision, asserting two assignments of error. As we address Tippen's assigned errors, we are mindful that an appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. Whether summary judgment is appropriate hinges upon the movant's demonstration (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). In addition, the burdens placed upon both the movant and nonmovant in a motion for summary judgment are as follows:
 [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. With these principles in mind, we now turn to the merits of Tippen's two assignments of error.
 I. The lower court erred when it determined that the inter-office correspondence dated April 14, 1998 from Peter Vogel to Jim Tippen was the contract between the parties articulating the parties['] final expression and complete expression of the parties['] intentions.
Tippen asserts error in the trial court's decision, claiming that the April 14, 1998 correspondence does not contain the essential elements of a contract. He maintains that Mead failed to prove the existence of an offer, an acceptance, and a meeting of the minds. Conversely, Tippen argues that the agreement was not final until the April 22, 1998 meeting when the requirements to obtain the retention benefits were explained, and until Vogel's subsequent communications regarding the possibility that Tippen would receive up to two times his salary if he performed the requirements. According to Tippen, Mead breached that contract by not giving Tippen twice his salary.
To prove breach of contract, a party must establish the following elements: "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Doner v.Snapp (1994), 98 Ohio App.3d 597, 600.
To prove the existence of a contract, the elements of mutual assent (generally, offer and acceptance) and consideration must be present.Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 11-12. See, also, EpiscopalRetirement Homes, Inc. v. Ohio Dept. of Indus. Relations (1991),61 Ohio St.3d 366, 369. There must also be a "meeting of the minds" and a showing that the contract was definite as to its essential terms.Episcopal Retirement Homes, supra, at 369; Alligood v. Procter GambleCo. (1991), 72 Ohio App.3d 309, 311.
In this case, we agree with the trial court that the April 14, 1998 document, complete with attachments, constituted an offer to Tippen for up to one year's salary as a retention bonus if he extended his "best efforts." Tippen accepted the offer by signing the document on the line which had indicated his "acceptance of the terms of these benefits." Thus, sufficient evidence exists to prove that an offer and acceptance did occur.
Tippen also contends that there was no meeting of the minds between himself and Mead until after the April 22, 1998 meeting and after Tippen's subsequent conversations with Vogel. We do not agree. At the time Tippen signed the April 14, 1998 document, Tippen had been aware that his retention bonus was between six and twelve months of his salary as long as he put forth his "best efforts," and he had agreed to such. Thus there was a meeting of the minds. It was not until April 22, 1998, when he learned that other "key employees" had the potential to receive a greater percentage of their salaries, that Tippen had sought a modification of the terms of the contract.
To further support his argument that there was not a meeting of the minds, Tippen claims that the terms of the agreement were still evolving at the time the April 14, 1998 contract was signed, thus essential terms of the contract had been absent. According to Tippen, it was not until the April 22, 1998 meeting that he fully understood the scope of his duties, and at that point there was a meeting of the minds. We do not agree.
As we stated in Nilavar, supra, "[i]n a contract that is not for goods, the essential terms are, generally, the parties to the contract and its subject matter." Id. at 13. Furthermore, as we stated in Ruddv. Online Resources, Inc. (June 18, 1999), Montgomery App. No. 17500, unreported,
 Generally, it can be said that no contract exists if both parties contemplate that something remains to be done to form a contract. 17 Ohio Jurisprudence 3d (1980) 472, Contracts, Section 40. Nevertheless, the fact that certain terms remain to be negotiated or determined by judicial resolution does not create an indefiniteness that necessarily invalidates the contract. Mr. Mark Corp. v. Rush, Inc. (1983), 11 Ohio App.3d 167, 169[.]
As this is not a contract for the sale of goods, the trial court focused upon the following language as contained in the attachment to the April 14, 1998 document:
 To be entitled to retention benefits, employee must extend their {sic} best efforts to assist Mead with the sale of this business, and fairly represent Mead and Zellerbach to potential buyers. At the same time, employee must continue to work toward meeting Zellerbach's annual performance contract, and representing the best interests of Mead with all employees, customers, suppliers, and other appropriate parties.
 The Division President, Executive Vice President, and Vice President, General Counsel and Secretary shall determine, on date of sale, if these requisite standards of conduct have been met, and the level at which the retention benefits will be paid.
Finding that the attachment "set forth the range of benefits Plaintiff would receive if he met the above conditions," and that the parties were defined in the document, the trial court found the contract to be definite as to its essential terms. We agree with the trial court and find no merit in Tippen's argument that because he sought a modification after learning that other key employees were offered potentially higher compensation, there was no meeting of the minds with respect to the original contract. Moreover, based upon Rudd, we find that a valid contract did exist prior to the April 22, 1998 meeting, despite the lack of finalization of the details.
In the alternative, Tippen argues that if we find the April 14, 1998 document to be a contract, the subsequent conversations he had with Vogel should be treated as an oral modification. However, we cannot find that an offer, an acceptance, or a meeting of the minds existed between Mead and Tippen to increase Tippen's retention bonus to one to two years of his salary. Vogel made it clear to Tippen, and Tippen stated such in his deposition, that any increase in retention benefits would have to be approved by Palmer and Lane and that Vogel did not have authorization to increase them unilaterally. Likewise, Tippen admitted in his deposition that Vogel had been unable to obtain such approval from Palmer and Lane.
Accordingly, we find that the April 14, 1998 document was a valid contract between Mead and Tippen. We further find that no breach occurred as to the contract, as Mead abided by the original contract. Thus, the trial court did not err in granting Mead's motion for summary judgment.
Tippen's first assignment of error is overruled.
 II. The lower court erred when it granted summary judgment in favor of Mead Corporation and against James Tippen on Tippen's fraud claim solely because the court found that Peter Vogel did not have the authority to modify the parameters of Tippen's bonus arrangement.
Tippen maintains that Vogel's assurances that he would secure an enhanced retention bonus amounted to fraud. Tippen concedes that the April 14, 1998 document stated that the level of the retention bonus would be determined by Vogel, Palmer and Lane, however Tippen argues that Vogel had the unilateral authority to increase the parameters of the bonus. Because of this, Tippen argues that he justifiably relied on Vogel's conversations whereby Vogel had stated that Tippen would have the potential to receive two times his salary as his retention benefit, and that he had been damaged thereby when he performed the work and did not receive the "full" compensation.
The elements of an action sounding in fraud are as follows:
 (a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
 (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 (d) with the intent of misleading another into relying upon it,
 (e) justifiable reliance upon the representation or concealment, and
 (f) a resulting injury proximately caused by the reliance.
Amerifirst Savings Bank of Xenia v. Krug (1999), 136 Ohio App.3d 468,490-491, quoting Burr v. Stark Cty. Bd. Of Commrs.(1986),23 Ohio St.3d 69, paragraph two of the syllabus.We cannot find that Tippen produced evidence creating a genuine issue of material fact as to the alleged fraud, as Tippen had failed to prove a false representation of fact. In his deposition, Vogel stated that he had explained to Tippen that Palmer's and Lane's agreement were necessary to increase his retention benefits. Vogel stated that he had further told Tippen that there would not be a decision by the three until the conclusion of the retention period.
A great deal of Tippen's deposition focused on conversations with Vogel prior to receiving notice that his retention benefits would only be equivalent to one year's salary. In his own deposition, Tippen admitted that he had the following conversation with Vogel following the April 22, 1998 meeting:
 Q. Are you saying that when you left the meeting, it was your assumption that you were going to get what everybody else got in the group?
 A. My assumption was that I would be paid equal and work equal as the other members of the group. That is how I interpreted the way [Vogel] talked to me. He reassured me.
 Q. That was on the basis of him saying we will take care of it?
 A. Yes. He said — he said he needed to talk to two other guys but he would take care of it.
 Q. And did he say anything to the effect that I don't have the authority to make the decision by myself?
 A. He said he would have to talk to Tom Palmer and Ray Lane but he could assure me he would take care of it.
(Doc. No. 27, p. 34.) Thereafter, Tippen asked Vogel if he had received verification from Palmer and Lane, but Vogel had never stated that he had obtained their authorization. Based upon this testimony, we find that Tippen failed to prove that Vogel made a false representation of fact to Tippen. Nowhere can we discern that Vogel made statements to Tippen that were in "utter disregard" for or "reckless" as to the truth. Instead, Vogel was forthright with Tippen by telling him that Vogel needed authorization from Palmer and Lane for the increase in potential retention benefits.
Similarly, this line of testimony disproves the fourth element of fraud. Because Vogel explained to Tippen that approval from Palmer and Lane was necessary, we cannot find the intent on behalf of Vogel to mislead Tippen into thinking that Vogel alone could increase his retention benefits.
Finally, we agree with the trial court that the element of justifiable reliance remains "unsatisfied." Tippen's recurring discussions with Vogel about whether Vogel had received authorization, and Vogel's periodic updates to Tippen, demonstrate that Tippen was not relying on an "agreement" that they had already finalized.
Accordingly, Tippen's second assignment of error is overruled.
The judgment of the trial court is affirmed.
 ______________________________ FREDERICK N. YOUNG, J.
BROGAN, J. and WOLFF, J., concur.