DECISION
Plaintiffs-appellants Bruce H. Bennett, Claude William Frishette, II, and Michael Bahleda, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment for defendant-appellee, American Electric Power Service Corporation ("AEP").
Appellants initiated this action seeking rescission of a contract assigning to AEP their rights in a patented product and process known under the trademarked name Flash Fill. AEP answered asserting that the assignment was enforceable, and in addition brought a counterclaim for indemnification.
The matter was decided by the trial court on cross-motions for summary judgment. The trial court found that various letters exchanged between the parties and agreements entered into between the parties constituted a binding contract, that AEP had not breached the contract of assignment, and that even if breach were shown, appellants had so delayed bringing their action that rescission was no longer an appropriate remedy. The trial court therefore entered judgment in favor of AEP on appellants' claims. AEP voluntarily dismissed its counterclaim without prejudice.
Appellants have timely appealed and bring the following assignments of error:
ASSIGNMENTS OF ERROR:
 1. THE TRIAL COURT ERRED IN FINDING THAT THE SEPTEMBER 11, 1990, LETTERS ARE THE CONTROLLING AGREEMENTS[.]
 2. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT/APPELLEE WAS NOT IN BREACH OF THE ASSIGNMENT[.]
 3. THE TRIAL COURT ERRED IN FINDING THAT RECISION [sic] WAS NOT AN APPROPRIATE REMEDY FOR PLAINTIFFS/APPELLANTS[.]
 4. THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLANTIFFS/APPELLANTS' MOTION FOR SUMMARY JUDGMENT[.]
Appellants' four assignments of error present interrelated issues and will be addressed together. The present matter was decided on summary judgment. Civ.R. 56(C) states that summary judgment shall be granted if:
 *** [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ***
Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. "The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial.
Appellate review of summary judgments is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. Dresher, supra; Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38.
The following facts can be taken as essentially uncontested for purposes of summary judgment. The three appellants, along with Gary Jablonski and Paul Stodola, who are not parties to this suit, collectively participated in the invention of Flash Fill, a rapid-setting backfill composition derived from naturally cementitious fly ash produced by AEP's electric power generation facilities. Flash Fill presents advantages in backfilling, inter alia, utility trenches, and presents the additional advantage of utilizing fly ash which would have to be otherwise disposed of. During the period when Flash Fill was invented and patented, the co-inventors were employees of AEP. As part of their employment contract, each had signed the "Employee Patent and Confidential Information Agreement," under which employees were permitted to retain ownership of any invention, patented or not, created in the course of their employment. In exchange, AEP was to receive a nonexclusive right to employ the invention without paying royalties:
 NOW, THEREFORE, as a part consideration for his employment by the Company, the Employee hereby grants to the Company and to all other companies in the System irrevocable, non-exclusive, royalty-free rights and licenses to manufacture and use or acquire and use anywhere in their business any and all inventions, discoveries, or improve-ments which the Employee may at any time make, individually or jointly with others, during the continuance of his employment and during a period of six (6) months after termination of such employment, which relate to the electric power industry or which may be useful to such industry or to said companies in their business. ***
When the Flash Fill process was perfected, appellant Bennett requested that AEP pay for the patent search and application. AEP's attorney, Bradford R. Signet, responded with an identical letter to each inventor, dated September 11, 1990, stating that management had approved a patent search and application for the process then referred to as a "Flowable Fly Ash Backfill," but as AEP was undertaking the expense of the patent search and application, AEP expected to own the patent. Each of the five inventors, including the three appellants, signed a copy of the letter, which stated, in pertinent part, as follows:
 I recently received management approval for a patent search and, if warranted, patent application associated with the process and product referred to as "Flowable Fly Ash Backfill". The following five individuals will be listed as co-inventors:
B. H. Bennett M. Bahleda
G.J. Jablonski C.W. Freshette
P.R. Stodola
 Due to AEP's potential use of flowable fly ash backfill in its ash utilization program, and the possible conflict of interest associated therewith, it is my understanding that the individual inventors have agreed to release any interest they may have in the flowable fly ash backfill process and product. The inventors agree that all rights in said product or process will vest in the Company. Based on this understanding, the Company intends to proceed with acquiring a patent for flowable fly ash backfill in the name of American Electric Power Service Corporation.
 Please indicate your agreement with the above by singing this letter in the place provided below and returning same to my attention.
After a patent was obtained on Flash Fill, the five inventors executed a further document, dated January 16, 1991 ("the assignment"), formerly assigning to AEP their rights in Flash Fill:
 IN CONSIDERATION of the sum of One Dollar (1.00), and of other good and valuable consideration paid to the undersigned Assignor, by the Assignee, American Electric Power Service Corporation ***, receipt whereof is hereby acknowledged, the undersigned Assignor by these presents do hereby sell, assign, transfer and set over and have sold, assigned, transferred and set over unto the said Assignee the entire right, title and interest in and to the invention or improvement in RAPID-SETTING FLOWABLE BACKFILL COMPOSITION AND METHOD OF USING said invention being fully described and/or claimed in the application for Letters Patent of the United States of America, executed this date, in and for the United States and all foreign countries, the same to be held and enjoyed by said Assignee, its successors, assigns or other legal representatives, to the full ends of the terms for which all Letters Patent therefor may be granted, as fully and entirely as the same would have been held and enjoyed by the undersigned if this assignment and sale had not been made.
AEP thereafter used the Flash Fill process productively for several years. During this period, the inventors wrote an article on Flash Fill for an in-house AEP magazine, and each received $100 and fifty shares of AEP stock. In March 1992, Frishette, Bahleda, Jablonski, and Stodola received an "Exceptional Achievement" award of $7,500 for their work on Flash Fill. Bennett, who was a management employee and not eligible for the exceptional achievement award, received a management bonus for his work on the Flash Fill invention pursuant to a management incentive program.
The above-outlined awards and bonuses were given under existing programs at AEP, and not specifically tied to any invention compensation program. During the period in question, numerous other AEP employees, the preponderance of whom had not necessarily participated in the invention or implementation of any new patented process, received such awards and bonuses.
Appellants' position on appeal is that the trial court incorrectly concluded that the September 11, 1990 letters signed by the inventors are binding contracts and the controlling agreement in the assignment of their rights in Flash Fill to AEP. Appellants assert that the formal assignment executed on January 16, 1991, is the controlling agreement, and that the recited consideration therein of "[o]ne [d]ollar (1.00), and of other good and valuable consideration" was never paid to the inventors, leaving AEP in breach of the agreement.
Patent assignment is governed by Section 261, Title 35, U.S.Code:
Ownership; assignment
 Subject to the provisions of this title, patents shall have the attributes of personal property.
 Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns, or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.
The pertinent federal statutes place no additional restriction on the form to be taken by such a contract of assignment, and in the absence of federal preemption on such details, we will apply state contract law. Arrow Communication Laboratories, Inc. v. Pico Products, Inc. (N.Y.App. Div. 1994), 206 A.D.2d 922. Under Ohio law, a contract is formed where there is mutual assent and consideration. Nilavar v. Osborn (1998),127 Ohio App.3d 1, 11. An express contract exists when the parties' assent to the terms of the contract are expressed by an offer and acceptance. Legros v. Tarr (1989), 44 Ohio St.3d 1, 6. In addition to mutual assent and consideration, there must be a meeting of the minds, and the essential terms must be definite and certain. Nilavar at 11. In a contract other than one for the sale of goods, the essential terms generally include identifying the parties and the subject matter of the contract. Nilavar at 13. The terms of the contract are thus certain if they "provide a basis for determining the existence of a breach and for giving an appropriate remedy." Mr. Mark Corp. v. Rush, Inc. (1983),11 Ohio App.3d 167, 169.
The record before us supports the proposition that the September 11, 1990 letter constitutes a binding, enforceable assignment of the inventor's rights in the Flash Fill product to AEP. All the inventors signed and acknowledged consent to the terms of the letter, which provided that each agreed to release "any interest they may have in the flowable fly ash backfill process and product." The letter then stated, "[b]ased on this understanding, the company intends to proceed with acquiring a patent." The consideration thus recited in the contract can be discerned as AEP's efforts and expense in pursuing the patent application process. The September 11, 1990 letter thus contains all the requisite elements of identification of the parties, identification of the subject matter, and recitation of consideration so that an enforceable contract of assignment could be found to exist between the inventors and AEP.
Appellants cite several cases for the proposition that an agreement for assignment of rights in an idea or invention will not be binding where the idea or invention has yet to come to fullfruition. The cases cited are for the most part inapposite; in particular, that of Arachnid, Inc. v. Merit Industries, Inc. (Fed. Cir. 1991), 939 F.2d 1574, actually supports the enforceability of the present assignment. In Arachnid, the plaintiff contested the enforceability of a consulting contract which provided that any future inventions developed by plaintiff during the course of the agreement would be assigned to defendant. The court found the agreement unenforceable because it was a mere agreement to assign, rather than an assignment, because legal title to an invention "can pass to another only by a conveyance which operates upon the thing invented after it has become capable of being made the subject of an application for a patent." Arachnid at 1581. In the present case, Flash Fill was by all accounts a completely developed process at the time the inventors signed the September 11, 1990 letters. It was therefore an identifiable invention capable of being made the subject of a patent application, and could properly be the subject of an assignment pursuant to the holding in Arachnid.
Having found that an enforceable contract of assignment existed based upon the September 11, 1990 letters, we now turn to the question of whether the subsequent document executed between the parties materially modified the terms of the agreement and created an additional avenue for finding a breach on the part of AEP. Reviewing the text of the January 16, 1991 assignment document, we find no indication that the terms of the agreement therein are substantially modified. The documents refers to consideration "of the sum of [o]ne [d]ollar (1.00), and of other good and valuable consideration paid to the undersigned ***, receipt whereof is hereby acknowledged." In the absence of further specificity, the "other good and valuable consideration" can be taken as identical to the prior agreement, that is, the expenses incurred by AEP in pursuing and securing the Flash Fill patent.[1]
Finally, we address the question of whether nonpayment by AEP of the one dollar recited in the January 16, 1991 assignment agreement constitutes a breach. For purposes of summary judgment, the testimony of appellants that they never, in fact, received this dollar could arguably be taken as creating a material issue of fact as to whether the dollar was paid. No very satisfactory authority has been found in Ohio on the question of whether nonpayment of nominal consideration, in the form of a single dollar, where the contract recites such in addition to "other good and valuable consideration," will constitute breach. Although ancient, the best authorities on the issue hold that nonpayment of such nominal consideration will not constitute breach, at least in instances where the actual value of the subject of the contract does not, in fact, correspond to the nominal consideration. Skerrett v. Presbyterian Society (1885),41 Ohio St. 606; Grouse v. Bd. of Edn. of Green Twp. (1920),12 Ohio App. 481. We accordingly find that AEP is not in breach of the agreement as defined in this opinion based upon nonpayment of any nominal consideration recited in the agreement.
Based upon the foregoing, appellants first, second and fourth assignments of error are overruled. Appellants' third assignment of error, addressing the appro-priateness of rescission as a remedy in this case, is rendered moot based upon the absence of breach by AEP. The judgment of the Franklin County Court of Common Pleas is therefore affirmed.
BOWMAN and LAZARUS, JJ., concur.
[1] While AEP argued before the trial court and upon appeal that additional consideration could be found in the form of continued employment of the inventors, receipt of bonuses from the employee exceptional achievement award program, and management bonuses, we agree with appellants that there remains a material issue of fact whether the benefits are in any way linked to the execution of the assignment (although they appear undisputedly linked to the invention of Flash Fill, which is not the same thing). However, such additional consideration is not necessary to find a valid assignment, based upon the procurement of the patent at AEP's expense.