[Cite as *Bertovich v. St. John*, 2012-Ohio-475.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 96619

---

## MICHAEL BERTOVICH

### PLAINTIFF-APPELLANT

vs.

## WILLIAM ST. JOHN

### DEFENDANT-APPELLEE

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Garfield Heights Municipal Court
Case No. CVI 1003126

**BEFORE:** Keough, J., Cooney, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 9, 2012

**ATTORNEYS FOR APPELLANT**

Brent L. English
Law Offices of Brent L. English
M.K. Ferguson Plaza, Suite 470
1500 West Third Street
Cleveland, OH 44113-1422

Nicholas A. Reif
1220 West 6th Street
Suite 502
Cleveland, OH 44113

**FOR APPELLEE**

William St. John, pro se
19413 Rashell Drive
Walton Hills, OH 44146

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Plaintiff-appellant, Michael C. Bertovich ("Bertovich"), appeals from the trial court's judgment finding in favor of defendant-appellee, William St. John ("St. John"), and dismissing his small claims action for breach of contract. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} On October 21, 2010, Bertovich filed suit in Garfield Heights Municipal Court for St. John's alleged breach of contract in connection with the sale of residential property owned by St. John. Bertovich claimed

damages of $2,670.98.[1]  St. John filed a counterclaim (which he voluntarily dismissed at the close of trial), and the case proceeded to a bench trial on February 17, 2011.

{¶ 3} The evidence at trial demonstrated the following.  On September 17, 2009, the parties entered into an agreement for the sale to Bertovich of St. John's residential property located in Maple Heights, Ohio.  The purchase price for the property was $120,000, and the property was to be sold in "as is" condition.  The purchase agreement was silent regarding a closing date for the transaction.  The agreement contained the following provision regarding compliance with point-of-sale inspections required by the city of Maple Heights:

> SELLER agrees to comply with any and all local governmental point-of-sale laws and/or ordinances.  SELLER will promptly provide BUYER with copies of any notices received from governmental agencies to inspect or correct any current building code or health violations.  If applicable, BUYER and SELLER shall have ____ (    ) days after receipt by BUYER of all notices to agree in writing which party will be responsible for the correction of any building code or health violation(s).  In the event BUYER and SELLER cannot agree in writing, this AGREEMENT can be declared null and void by either party.

The parties did not fill in the blanks in this provision regarding how many days the parties would have to agree upon who would pay for necessary

---

[1] Prior to trial, Bertovich filed a motion to amend his claim for damages to $3,648.98.   The trial court denied the motion because the municipal court has no jurisdiction to award damages over $3,000 when the case is filed in the small claims division.

repairs after receiving notice from the city. However, in a handwritten addendum to the purchase agreement, the parties agreed that Bertovich would "assume all costs associated with and related to the sale of the property and transfer of title."

{¶ 4} Bertovich testified at trial that he agreed to pay $13,000 to replace the gravel driveway at the property, which the parties knew was not code-compliant, but never agreed to pay for the costs of repairing other code violations that the city's required point-of-sale inspection might reveal. St. John, on the other hand, testified that Bertovich repeatedly assured him that he would pay for all required repairs the inspection might reveal and that the understanding of all parties to the addendum was that Bertovich was assuming responsibility for such costs.

{¶ 5} On November 5, 2009, St. John arranged for the city to conduct the required inspection on the following day. That evening, however, Bertovich advised St. John that he would not pay for any repairs necessitated by the inspection, other than to replace the driveway. St. John then cancelled the inspection, at which point Bertovich repudiated the agreement. Bertovich subsequently purchased a home located in Walton Hills, Ohio for $125,000.

{¶ 6} In its findings of fact and conclusions of law rendered after trial, the trial court found that there was no meeting of the minds between the

parties as to who would pay for repairs necessitated by the city's inspection and, accordingly, there was no contract. The court further found that because the purchase agreement, including the addendum, was vague and ambiguous regarding performance (who was to pay for the repairs) and performance (when the transaction was to close), it was unenforceable. Finally, the court held that even assuming there was a valid contract and a breach, Bertovich had not suffered any damages. Accordingly, the trial court found in favor of St. John and dismissed the complaint.

## II. Meeting of the Minds

**{¶ 7}** In his first assignment of error, Bertovich contends that the trial court erred in finding that the contract was unenforceable because there was no meeting of minds regarding who was to pay for repairs required by the point-of-sale inspection.

**{¶ 8}** To prove the existence of a contract, a party must show that both parties consented to the terms of the contract, there was a "meeting of the minds," and the essential terms of the contract are definite and certain. *Morganstern, MacAdams & Devito Co., L.P.A. v. Hilliard Bldg. Partnership*, 8th Dist. No. 79407, 2001-Ohio-4258, 2001 WL 1612080, citing *Nilavar v. Osborn*, 137 Ohio App.3d 469, 738 N.E.2d 1271 (2d Dist.2000); *see also Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 143 (1991).

{¶ 9} The terms of a contract are sufficiently certain if they "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 169, 464 N.E.2d 586 (8th Dist.1983). Where the parties have agreed about issues critical to the transaction, the court may determine the meaning of ambiguous or uncertain terms according to the parties' mutual understanding, the custom and practice in the trade, or other established legal principles. *Id.*

{¶ 10} Nevertheless, as the Supreme Court of Ohio observed in *Litsinger Sign Co., Inc. v. Am. Sign Co.*, 11 Ohio St.2d 1, 14, 227 N.E.2d 609 (1967),

> it is settled law that if the parties' manifestations taken together as making up the contract, when reasonably interpreted in the light of all the circumstances, do not enable the court to determine what the agreement is and to enforce it without, in effect, 'making a contract for the parties,' no enforceable obligation results." *Id.,* citing 1 Corbin on Contracts, 394 and 398, Section 95.

{¶ 11} That is the situation presented here. The evidence at trial demonstrated that there was no "meeting of the minds" regarding performance of the contract. St. John testified that Bertovich had agreed to pay for the repairs necessitated by the city's required point-of-sale inspection,[2] while Bertovich insisted that he had agreed to pay only the cost

---

[2]Bertovich argues that St. John's testimony to this effect was excluded. But Bertovich called St. John on cross-examination in his case-in-chief and asked him whether it was his understanding upon signing the addendum that Bertovich was to pay the repair costs: "[Y]our understanding when you signed that it was all costs, it wasn't just closing – it wasn't the closing costs?" St. John

of replacing the driveway. But Bertovich's alleged agreement to pay to replace the driveway was not included in the purchase agreement, nor did either the purchase agreement or the addendum provide who was to pay for the repairs. St. John testified that the parties' intent in signing the addendum to the purchase agreement, which provided that Bertovich was to assume "all" costs "related to the sale," was that Bertovich was to pay the repair costs. But the addendum can also be reasonably interpreted to mean that Bertovich assumed only such costs related to the sale as title and closing costs.

{¶ 12} Bertovich's argument that the parties agreed in the purchase agreement on a procedure for handling repairs resulting from the point-of-sale inspection is without merit because the parties did not complete that part of the agreement. Thus, not only was there no agreement as to who would pay for the repairs, there was also no agreement as to how many days the parties would have after receiving notice of necessary repairs to agree on who was to pay for them before the agreement could be declared void. Hence, there was no agreement as to procedure or performance.

{¶ 13} In light of the evidence at trial and the ambiguity in the

---

responded, "It was everybody in the room's understanding because we talked about it." No one raised any objection to this testimony. Later, when St. John's counsel asked St. John about his understanding of the addendum, the trial court sustained Bertovich's objection to any further testimony about what Bertovich had told him.

addendum, it is apparent there was no agreement regarding performance of the contract. Under such circumstances, for the court to have decided that either Bertovich or St. John was responsible for the repair costs would have essentially created a contract for the parties. The trial court properly held that without a meeting of the minds, the agreement was unenforceable and, therefore, the first assignment of error is overruled.

### III.   Specific Closing Date

{¶ 14} In his second assignment of error, Bertovich contends that the trial court erred in holding that the purchase agreement was not enforceable because it lacked a specific closing date. He contends that the court should have concluded from the evidence presented at trial that the parties agreed that the closing date was to be a "reasonable time" after the transaction was signed, which he interprets to mean prior to the end of November 2009, the date he had to be out of the house he was living in.

{¶ 15} "A closing date is not a per se essential term required to validate a [real estate purchase] contract. * * * If the agreement does not contain a date as to when payment is to be made or performance is to be rendered, a reasonable time can be imposed." *Park v. Acierno*, 160 Ohio App.3d 117, 2005-Ohio-1332, 826 N.E.2d 324, ¶ 45 (7th Dist.), citing *Cionni v. Reid*, 7th Dist. No. 90J19, 1991 WL 139579 (July 25, 1991), and *Walkana v. Hanna*, 7th Dist. No. 87CA174, 1988 WL 117988 (Oct. 28, 1988).

{¶ 16} Therefore, the trial court erred in holding that the lack of a closing date in the purchase agreement made the contract unenforceable. The court could have determined a reasonable time for performance, whether the end of November or otherwise, from the facts presented at trial.

{¶ 17} Appellant's second assignment of error is sustained. Nevertheless, we find the court's error to be harmless because, as discussed above, the contract was unenforceable due to its ambiguity regarding who was to pay for necessary repairs. Further, as discussed below, even assuming there was a contract and a breach, Bertovich did not incur any damages.

## IV.   Damages

{¶ 18} In his third assignment of error, Bertovich contends that the trial court erred in determining that even assuming a contract and breach, Bertovich did not incur any damages.

{¶ 19} To prove breach of contract, a plaintiff must demonstrate the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.  *Nilavar v. Osborn*, 127 Ohio App.3d 1, 11, 711 N.E.2d 726 (2d Dist.1998), citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994).

{¶ 20} The damages awarded for a breach of contract should place the injured party in as good a position as he would have been but for the breach.

*Mercury Fin. Co., LLC v. Smith*, 8th Dist. No. 87562, 2006-Ohio-5730, 2006 WL 3095664, ¶ 29, citing *Textron Fin. Corp. v. Nationwide Mut. Ins.*, 115 Ohio App.3d 137, 684 N.E.2d 1261 (9th Dist.1996). A corollary of this legal principle is that a party generally should not recover a greater amount in damages for breach of an obligation than he could have gained by full performance thereof on both sides. *Id.*, citing *Computer Sciences Corp. v. Owens-Illinois Corp.*, 6th Dist. No. 7778, 1975 WL 182484 (Apr. 18, 1975).

{¶ 21} Just two weeks after he repudiated the contract for the Maple Heights home, Bertovich purchased a home in Walton Hills. Bertovich testified that he paid $125,000 for the home and that it needed no repairs. Bertovich also testified that if his purchase of the Maple Heights home had gone through, he would have paid $133,000 ($120,000 for the house plus $13,000 to repair the driveway). Even adding Bertovich's alleged expenses related to the uncompleted purchase of the Maple Heights home[3] to the $125,000 that he paid for the Walton Hills home, Bertovich's net cost for the Walton Hills home is still less than what he would have paid if his purchase of the Maple Heights home had gone through. Accordingly, the trial court did not err in concluding that, even assuming there was a contract and a breach, Bertovich incurred no damages.

---

[3]$3,000 for the lost down payment assistance grant, $350 for an appraisal of the Maple Heights property, $240 to clean the Maple Heights property, and $58.98 to transport items from the

{¶ 22} We are not persuaded by Bertovich's argument that he sustained money damages because every piece of real estate is unique, and he was denied the opportunity to purchase the Maple Heights property. Contracts involving interests in land may be specifically enforced, even without evidence there is no adequate remedy at law, because interests in land are unique. *Gleason v. Gleason*, 64 Ohio App.3d 667, 672, 582 N.E.2d 657 (4th Dist.1991). Bertovich requested only money damages, however; he did not ask for the equitable remedy of specific performance. Moreover, as the trial court noted, there was no testimony at trial as to the uniqueness of the Maple Heights home.

{¶ 23} The third assignment of error is therefore overruled.

Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

---

Maple Heights property to the Walton Hills property (total $3,648.98).

COLLEEN CONWAY COONEY, P.J., and
EILEEN A. GALLAGHER, J., CONCUR